**SYMBOL TECHNOLOGIES, INC.,**
**and Wireless Valley Comm.,**
**Inc., Plaintiffs,**

v.

**ARUBA NETWORKS, INC., Defendant.**

**Civil Action No. 07–519–JJF.**

United States District Court,
D. Delaware.

March 30, 2009.

Eric J. Lobenfeld, Esquire; Ira J. Schaefer, Esquire; Lawrence V. Brocchini, Esquire; Mitchell S. Feller, Esquire; and Arun Chandra, Esquire of Hogan & Hartson L.L.P. of New York, NY, Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP of Wilmington, DE, for Plaintiffs.

Brandon C. Conard, Esquire and Lawrence O. Onyejekwe, Esquire of Weil, Gotshal & Manges LLP of Redwood Shores, CA, Alfredo A. Perez de Alejo, Esquire; Nicholas Groombridge, Esquire; Paul E. Torchia, Esquire; and Etai Lahav, Esquire of Weil, Gotshal & Manges LLP of New York, NY, Frederick L. Cottrell, III, of Richards, Layton & Finger, P.A. of Wilmington, DE, for Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is Plaintiffs' Motion to Strike the Fifth, Sixth, and Ninth Defenses and Introduction; and Dismiss, in Part, Count Six of Defendant's Answer and Counterclaims (D.I. 13). For the reasons discussed below, the Court will grant in part and deny in part Plaintiffs' motion.

## I. Background

On August 27, 2007, Plaintiffs Symbol Technologies, Inc. ("Symbol") and Wireless Valley Communications, Inc. ("Wireless Valley") filed this action alleging that Defendant Aruba Networks, Inc. ("Aruba") infringes four patents-U.S. Patent No. 7,173,922 ("'922 patent"), No. 7,173,923 ("'923 patent"), No. 6,625,454 ("'454 patent"), and No. 6,973,622 ("'622 patent")(collectively, "patents in suit"). (D.I. 1.) The patents in suit generally relate to wireless communications and Wireless Local Area Networks ("WLANs"). On October 17, 2007, Defendant filed an Answer and Counterclaims denying the allegations and seeking a declaration that the patents in suit are invalid, unenforceable, and not infringed. (D.I. 8.) On December 10, 2007, Plaintiffs jointly filed the Motion to Strike and Dismiss presently before the Court.

## II. Discussion

By their motion, Plaintiffs contend that the Court should strike, pursuant to Rules 12(f) of the Federal Rules of Civil Procedure, Defendant's affirmative defenses of equitable estoppel (Fifth Defense) and laches (Sixth Defense), one of Defendant's inequitable conduct defenses (Ninth Defense) and related Counterclaim (Count 6), and the Introduction and Summary to Defendant's Answer and Counterclaims.

 Pursuant to Rule 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Generally, motions to strike under Rule 12(f) are disfavored. *Seidel v. Lee*, 954 F.Supp. 810, 812 (D.Del. 1996); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707 at *2 (D.Del. 2007) (citations omitted). When ruling on a motion to strike, "the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law." [1] *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 697 F.Supp. 1360, 1362 (D.Del.1988) (citations omitted). Further, "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir.1986), *rev'd on other grounds*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992),(citations omitted).

### A. *The Fifth Defense*

By its fifth defense, Defendant alleges that Plaintiff Symbol is equitably estopped from asserting its '922 and '923 Patents because at no point during extensive merger negotiations between Symbol and Defendant in 2003 did Symbol advise or suggest it might later assert the patents at issue against Defendant. Plaintiffs contend that the defense should be stricken because silence, absent a duty to speak, cannot form the basis of equitable estoppel.

 A necessary element of the defense of equitable estoppel is misleading communication or conduct by a patentee that causes the accused infringer to infer that the patentee does not intend to enforce the patents-in-suit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1042 (Fed.Cir.1992) (*en banc*). "[S]ilence alone will not create an estoppel unless there was a clear duty to speak ... or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested." *Id.* at 1043-44 (citations omitted). Most commonly, courts have found intentionally misleading silence where "a patentee threatened immediate or vigorous enforcement of its patent right but then did nothing for an unreasonably long time." *Hottel Corp. v. Seaman Corp.,* 833 F.2d 1570, 1574 (Fed.Cir.1987), *overruled on other grounds*, 960 F.2d 1020 (Fed.Cir.1992), (citations omitted).

 Plaintiffs contend that the facts as alleged by Defendant cannot give rise to a duty to speak, citing *Altech Controls Corp. v. EIL Instruments, Inc.,* 8 Fed.Appx. 941

---

1. Even where there is no factual dispute, several courts have noted that a "motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law." *Salcer v. Envicon Equities, Corp.,* 744 F.2d 935, 939 (2d Cir.1984), *rev'd on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)(compiling cases). This is because such questions are generally determinable only after discovery and a hearing on the merits. Wright & Miller, *5C Federal Practice and Procedure* § 1381 (footnotes omitted). To decide disputed legal questions at an earlier stage in the litigation "would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts." *Salcer,* 744 F.2d at 939.

(Fed.Cir.2001) (unpublished) as instructive. In *Altech,* the Federal Circuit reversed a finding of equitable estoppel where, during earlier merger talks between the parties, plaintiff made no mention of an intent to enforce its patent against defendant, despite complaints of a third party copying plaintiff's products. *Id.* at 946. Further, Plaintiffs contend that Symbol's silence and conduct could not have triggered a duty to speak because the patents at issue had not yet issued, relying on *Ricoh Co., Ltd. v. Nashua Corp.,* 185 F.3d 884 (Fed.Cir.1999)(unpublished) which ruled that a patentee had "no right" to object to infringement on the basis of a pending patent application.

In response, Defendant contends that Rule 8 requires only notice pleading, that it "had no obligation to set forth all possible facts in its pleading," and that it has thus made no admission that Symbol was silent during merger discussions regarding its pending patent applications. Further, Defendant contends that as an equitable defense intended to be applied flexibly, equitable estoppel depends heavily on the communications at issue and the beliefs of the party being misled, and that it would be mistaken to assume the defense will fail until the full scope of the facts are presented.

The Court agrees with Defendant. Given that equitable estoppel "is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules," *A.C. Aukerman,* 960 F.2d at 1041, and that the factual record before the Court is sparse, the Court concludes that it cannot be said that the insufficiency of Defendant's fifth defense is "clearly apparent," *Cipollone,* 789 F.2d at 188. In drawing this conclusion, the Court notes the disfavor with which motions to strike are regarded and the early stage of the proceeding.

### B. *The Sixth Defense*

By its sixth defense, Defendant alleges that the relief sought by Plaintiffs Symbol and Wireless is barred by the doctrine of laches because Plaintiffs knew or should of known long ago of the activities now alleged to infringe the patents in suit. Plaintiffs contend that the sixth defense should be stricken because Defendant fails to allege unreasonable delay or prejudice.

■ While the doctrine of laches, as an equitable defense, must have flexibility in its application, a defendant asserting it in a patent infringement action has the burden to prove that "(1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." *Aukerman,* 960 F.2d at 1032 (citations omitted).

■ Plaintiffs contend that, because the '922 and '923 Patents issued on February 6, 2007, roughly seven months before this action was filed, Defendant's laches defense "can only be characterized as frivolous" and fails as a matter of law. Further, Plaintiffs contend it would be improper to characterize this seven month period as a delay at all, as Symbol was awaiting the PTO's Certificate of Correction on the '922 Patent, which had been requested to correctly reflect the claims allowed and without which Symbol may not have been able to bring suit. Plaintiffs also contend that Defendant improperly "muddles" together the separate and distinct plaintiffs and patents at issue, and that the period of delay for each patent must be determined independently.

In response, Defendant contends it provided in the sixth defense a "short and plain statement" giving Plaintiffs fair notice of the defense it intends to assert,

satisfying all that is required under Rule 8. Addressing Plaintiffs' contention that the defense fails as a matter of law, Defendant contends that it has alleged "prosecution laches," which may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in the prosecution of the patent application.

The Court is unpersuaded that the sixth defense of Defendant's Answer and Counterclaims gives fair notice of a claim of prosecution laches. As Plaintiffs contend, Defendant's laches allegation sets out a "garden variety" laches defense: "Accordingly, [Plaintiffs] knew or reasonably should have known of the activities now alleged by [Plaintiffs] to infringe the patents-in-suit long ago." (D.I. 46 at ¶ 52.) Finding nothing in the sixth defense that can be said to put Plaintiffs on fair notice of a "prosecution laches" defense, the Court will grant Plaintiffs' motion with respect to the sixth defense with leave to amend if Defendant chooses to do so.

C. *The Ninth Defense and Counterclaim Count Six*

By its ninth defense and counterclaim count six, Defendant alleges that Wireless Valley cannot enforce its '622 Patent because it committed inequitable conduct by "burying" a highly material reference in a disclosure to the patent examiner. Plaintiffs contend that this defense should be stricken as insufficient because inequitable conduct cannot be found where, as here, the reference was cited to the examiner.

■ Inequitable conduct cannot be based on an applicant's failure to cite a prior art reference where the examiner independently cited the same reference. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed.Cir. 1991). Likewise, "[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner." *Fis-*

*kars, Inc. v. Hunt Mfg.*, 221 F.3d 1318, 1327 (Fed.Cir.2000); *accord Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed.Cir.1995)(rejecting claim that applicant intended to deceive by "burying" a relevant reference).

■ By their motion, Plaintiffs contend that, based on clear Federal Circuit precedent, "burying" a relevant reference in a long list of citations cannot support a claim of inequitable conduct. In response, Defendant contends that Plaintiffs misread *Molins* and that at least two rules from the Manual of Patent Examining Procedure ("MPEP"), which the *Molins* court cited, caution against "burying" a reference.

While dicta in *Molins* supports the contention that "burying" a reference can be probative of bad faith, the Court concludes that this is contradicted by the decision of the case and by the clear precedent of *Scripps* and *Fiskars*. "An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner." *Fiskars*, 221 F.3d at 1327. Moreover, the MPEP rules Defendant relies on were from a 1980 version of the MPEP, and were no longer in force during the prosecution of the patent at issue. *See* MPEP Chapter 2000 § 2001.04 at 2000–4 (Aug. 2001 Rev.)("the new rules will actually facilitate the filing of information since the burden of submitting information to the Office has been reduced by eliminating, in most cases, the requirement for a concise statement of the relevance of each item of information listed in an information disclosure statement"); 37 C.F.R. § 1.98(a)(3)(i)(as amended in 1992)(requiring a concise explanation of relevance only for references "not in the English language"); *Molins*, 48 F.3d at 1184. The Court thus concludes that, under Federal Circuit caselaw and the relevant regulations, Defendant's ninth defense is insuffi-

cient as a matter of law. Accordingly, the Court will grant Plaintiffs' motion with respect to the ninth defense and counterclaim count six.

### D. The Introduction and Summary

■ Plaintiffs contend that the Introduction and Summary to Defendant's Answer should be stricken because it is not responsive to Plaintiffs' Complaint, serves no legitimate pleading purpose, and is potentially prejudicial to Plaintiffs.

The Introduction and Summary to Defendant's Answer and Counterclaims states, in part:

> Sometimes, when companies are losing in the marketplace, they sue—hoping that they can persuade jurors to overrule the verdict of the market. This lawsuit, filed by [Symbol & Wireless Valley] (both wholly owned subsidiaries of global behemoth Motorola, Inc.), is that type of case.
>
> . . .
>
> Recognizing the superiority of Aruba's technologies, Symbol tried to get access to them by buying Aruba.

(D.I. 45 at 1.) The Introduction and Summary continues by discussing Aruba's growth and receipt of "widespread recognition" and awards, and ends:

> The Complaint fails to explain why the plaintiffs:
> - waited for four years after Symbol's close inspection of Aruba's technology and business to sue;
> - sued with no prior notice to Aruba; and
> - chose to bring this lawsuit on the eve of Aruba's earnings announcement.
>
> That explanation can be found in Aruba's success in the marketplace.

(*Id.* at 2.)

Under Rule 12(f), even where the challenged material is "redundant, immaterial, impertinent, or scandalous," a motion to strike should not be granted "unless the presence of the surplusage will prejudice the adverse party." *Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.,* 820 F.Supp. 150, 154 (D.Del.1992) (citations omitted).

Plaintiffs contend that Defendant's Introduction and Summary serves no legitimate pleading purpose, as evidenced by being nowhere incorporated into the body of the Answer and Counterclaims, and impugns Plaintiffs' motives for seeking to lawfully enforce their patents. In response, Defendant contends that the Introduction and Summary sets forth background information critical to its equitable defenses and relevant to the Court's determination of credibility and equity.

The Court concludes that the Introduction and Summary to Defendant's Answer and Counterclaims is unrelated in any substantive way to Defendant's equitable defenses, and therefore the Court will grant Plaintiffs' motion with respect to the Introduction and Summary.

### III. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion to Strike and Dismiss. An appropriate order will be entered.

### ORDER

At Wilmington, this 30 day of March 2009, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike and Dismiss (D.I. 13) is ***GRANTED*** with respect to the sixth defense, ninth defense, counterclaim count six, and the introduction and summary of Defendant's Answer and Counterclaims, and ***DENIED***

with respect to the fifth defense of Defendant's Answer and Counterclaims.