# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

COLUMBUS LIFE INSURANCE COMPANY, )
                                                  )
                       Plaintiff, )
                                                  )

     v.                                      )   **C.A. No. N19C-11-175**
                                                  )           **PRW CCLD**
                                                    )

WILMINGTON TRUST COMPANY, )
as Securities Intermediary, )
                                                  )
                       Defendant. )

Submitted: January 21, 2021
Decided: February 15, 2021

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Plaintiff Columbus Life Insurance Company's Motion to Dismiss*
**GRANTED IN PART, DENIED IN PART.**

Donald L. Gouge, Jr., Esquire, DONALD L. GOUGE, JR., LLC, Wilmington, Delaware; Michael J. Miller, Esquire, Joseph M. Kelleher, Esquire, Philip J. Farinella, Esquire, COZEN O'CONNOR, Philadelphia, Pennsylvania, *Attorneys for Plaintiff Columbus Life Insurance Company.*

Steven L. Caponi, Esquire, Matthew B. Goeller, Esquire, K&L GATES LLP, Wilmington, Delaware; Ari Ruben, Esquire, SUSMAN GODFREY LLP, New York, New York; Steven G. Sklaver, Esquire, SUSMAN GODFREY LLP, Los Angeles, California, *Attorneys for Defendant Wilmington Trust Company.*

**WALLACE, J.**

This dispute arises over a stranger-originated life insurance ("STOLI") policy. Plaintiff Columbus Life Insurance Company seeks a declaratory judgment that the policy is void *ab initio* as an illegal wager on human life with no insurable interest thereunder.[1] Defendant Wilmington Trust Company filed its answer and counterclaims seeking declaratory judgment that the policy is enforceable, and alleging various other counts.[2]

Before the Court is Columbus Life's Motion to Dismiss[3] and Motion to Strike.[4] Having considered the record and the parties' arguments, those Motions are **GRANTED** in part and **DENIED** in part.

## I. FACTUAL BACKGROUND

In 2004, Columbus Life issued a $5 million universal life insurance policy to the Kluener Family Delaware Trust insuring the life of Rita Kluener (the "Policy").[5] Under the Policy, Columbus Life agreed to pay a $5 million benefit upon Kluener's death in exchange for the payment of premiums on the Policy until Kluener's 100th

---

[1]   Compl., Nov. 19, 2019 (D.I. 1); Am. Compl., Feb. 11, 2020 (D.I. 24).

[2]   Def.'s Countercls., May 21, 2020 (D.I. 50).

[3]   Plf.'s Mot. to Dismiss, June 29, 2020 (D.I. 55).

[4]   Plf.'s Mot. to Strike, June 29, 2020 (D.I. 54).

[5]   Def.'s Countercls. ¶ 23.

birthday.[6] Since its creation, the Policy has changed ownership multiple times and has accumulated $4.4 million in paid premiums.[7]

The agent of record for the Policy was Ed Leisher.[8] In 2005, Columbus Life began investigating whether the policies for which Leisher was the agent of record were stranger oriented.[9] As a part of that investigation, two Columbus Life representatives flew to Leisher's office in Maryland to review policy documents.[10] As a result of that investigation, Columbus Life canceled one of the policies brokered by Leisher, yet decided to keep the Kluener Policy in force.[11]

Due to changing financial conditions, Kluener sold the Policy.[12] In 2005, Kluener transferred the Policy to an entity controlled by the Private Equity Management Group ("PEM"), an investment fund that held hundreds of life insurance settlements.[13] From 2004 to 2009, PEM orchestrated a massive Ponzi

---

[6] *Id.* ¶ 21.

[7] *Id.* ¶¶ 11, 48, 49 (the portion paid by Wilmington Trust is unalleged).

[8] *Id.* ¶ 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 2.

[13] *Id.* ¶ 4.

scheme, defrauding nine investors out of over $800 million by misrepresenting its assets under management.[14] In 2009, the United States District Court for the Central District of California appointed a Receiver, Robert Mosier, to serve as Trustee for the policies in the PEM portfolio, including the Policy.[15] This Receivership authorized Mosier to take control of PEM's life insurance policies, including the Policy, for the benefit of PEM's creditors.[16]

Columbus Life received notice of the Receivership action on August 19, 2009.[17] Columbus Life kept the Policy in force and continued to receive premium payments on the PEM creditors' behalf.[18] In December 2010, the District Court authorized Mosier to transfer PEM's life insurance policies, selling them to the PEM Victims in March 2011.[19] As a result of the sale, the PEM Victims assumed responsibility for payment of all premiums on the Policy.[20]

---

[14] *Id.* ¶¶ 5, 31, 32, 33 (the PEM investors had no involvement in the origination of the life insurance policies).

[15] *Id.* ¶¶ 7, 34.

[16] *Id.* ¶ 35.

[17] *Id.* ¶¶ 36, 37 (the date Columbus Life confirmed receipt of the notification).

[18] *Id.* ¶ 40.

[19] *Id.* ¶ 44, 47; see *id.* ¶ 8 n.3 ("The "PEM Victims" refer to the beneficiaries of the "LIP Trust." The LIP Trust was created in March 2011 to hold the life insurance policies for seven of the largest victims of PEM's fraud. The LIP Trust is the entitlement holder under [Wilmington Trust]'s account to which the Policy is credited.").

[20] *Id.* ¶ 48.

In July 2011, the PEM Victims appointed Wilmington Trust as Securities Intermediary to maintain the Policy portfolio.[21] The PEM Victims authorized Wilmington Trust to take all actions requested by the PEM Victims regarding the Policy in its capacity as the Policy's registered owner.[22] This authorization included Wilmington Trust's obligation to continue to pay the premiums on the Policy.[23] In September 2011, by Columbus Life's approval, Wilmington Trust became the Owner and Beneficiary of the Policy.[24]

From 2011 to 2019, since this transfer of the Policy, Columbus Life continued to send its annual report to Wilmington Trust.[25] The information in the annual reports named Wilmington Trust as the owner of the Policy, reported that the Policy was valid and in force, and acknowledged that the "Insured Death Benefit" would be $5 million if the premiums were paid.[26]

The same year Kluener celebrated her 99th birthday, on July 19, 2019, Columbus Life sent Wilmington Trust a notice reserving its right to have the Policy

---

[21] *Id.* ¶¶ 8 n.3, 49, 50.

[22] *Id.* ¶ 53.

[23] *Id.* ¶¶ 8 n.3, 66, 93, 101.

[24] *Id.* ¶ 55.

[25] *Id.* ¶¶ 58, 60.

[26] *Id.* ¶¶ 56, 58, 59.

declared void *ab initio*, relieving its obligation to pay the $5 million Policy.[27] Despite this notice, Columbus Life continued to demand and collect payments of the Policy premiums.[28]

Four months later, Columbus Life filed its Complaint in this Court against Wilmington Trust seeking a declaratory judgment that the Policy is void *ab initio* as it is an illegal human life wagering contract and it lacks an insurable interest.[29]

## II. PROCEDURAL BACKGROUND AND PARTIES' CONTENTIONS

### A. WILMINGTON TRUST'S COUNTERCLAIMS.

Wilmington Trust has filed its Answer, Affirmative Defenses, and Counterclaims.[30] Wilmington Trust asserts five counterclaims against Columbus Life, seeking declaratory judgment that the Policy is enforceable through waiver and estoppel (Count I),[31] and alleging fraud and negligent misrepresentation (Counts II and III).[32] If the Court finds the Policy to be unenforceable, Wilmington Trust seeks,

---

[27]   *Id.* ¶ 70.

[28]   *Id.* ¶¶ 70, 72.

[29]   Compl. ¶¶ 25-29, 30-35; *see also* Am. Compl. ¶¶ 25-29, 30-35.

[30]   Def.'s Countercls. (D.I. 50).

[31]   Def.'s Countercls. ¶¶ 75-85.

[32]   *Id.* ¶¶ 86-93, 94-100.

in the alternative, to enforce the Policy through promissory estoppel (Count IV),[33] and a declaration that Columbus Life return all premiums paid on the Policy (Count V).[34]

In addition to its counterclaims, Wilmington Trust asserts that the following affirmative defenses bar Columbus Life's claims: (i) the First Amended Complaint fails to state a claim upon which relief can be granted (First Affirmative Defense); (ii) waiver and estoppel (Second Affirmative Defense); (iii) Columbus Life's own misrepresentations and omissions (Third Affirmative Defense); (iv) the principle of laches (Fourth Affirmative Defense); (v) the statute of limitations (Fifth Affirmative Defense); (vi) the principle of unclean hands (Sixth Affirmative Defense); (vii) the doctrine of *in pari delicto* (Seventh Affirmative Defense); (viii) Wilmington Trust's entitlement to an automatic refund of all premium payments if the Policy is declared void *ab initio* (Eighth Affirmative Defense); (ix) failure to mitigate damages (Ninth Affirmative Defense); (x) failure to join necessary parties (Tenth Affirmative Defense); (xi) the Policy's contestability clause (Eleventh Affirmative Defense); (xii) entities other than Wilmington Trust caused Columbus Life's damages (Twelfth Affirmative Defense); (xiii) the doctrine of offset (Thirteenth Affirmative Defense);

---

[33] *Id.* ¶¶ 101-108.

[34] *Id.* ¶¶ 109-119.

and (xiv) the applicability of the Delaware Uniform Commercial Code (Fourteenth Affirmative Defense).[35]

## B. COLUMBUS LIFE'S MOTION TO DISMISS AND MOTION TO STRIKE.

Columbus Life has now filed a motion to dismiss Wilmington Trust's counterclaims—seeking wholesale dismissal of the counterclaims[36]—and a motion to strike Wilmington Trust's affirmative defenses—seeking to strike Affirmative Defenses Two through Eight, Eleven, and Fourteen.[37]

In its dismissal motion, Columbus Life argues that the Court should dismiss Wilmington Trust's counterclaims seeking declaratory judgment that the Policy is enforceable through waiver and estoppel (Count I), and promissory estoppel (Count IV) for failure to state a claim as a court may never enforce a contract void *ab initio*.[38] Columbus Life contends that in the STOLI context, the law is clear that policies procured without an insurable interest are void *ab initio* as they violate public policy and "are so egregiously flawed that they amount to a fraud on the court."[39] Due to the Policy's status as void *ab initio*, Columbus Life insists that

---

[35] Def.'s Countercls. at 7-10.

[36] Plf.'s Mot. to Dismiss (D.I. 55).

[37] Plf.'s Mot. to Strike (D.I. 54).

[38] Plf.'s Mot. to Dismiss at 9.

[39] *Id*. (internal quotation marks omitted).

Wilmington Trust cannot attempt to "breathe life into such an agreement" via claims of waiver and estoppel.[40]

Next, Columbus Life argues that the Court should dismiss Wilmington Trust's counterclaims alleging fraud (Count II) and negligent misrepresentation (Count III) as they fail to allege the essential elements of a fraud or misrepresentation claim.[41] Columbus Life insists that Wilmington Trust's claims fail to allege a false statement.[42] Specifically, the three misrepresentations Wilmington Trust asserts that Columbus Life made in its annual reports are not false.[43] With regards to the annual reports' representations that the Policy was in force and that Wilmington Trust was the Policy's owner, Columbus Life argues that these representations are undeniably true.[44] Additionally, Columbus Life says, Wilmington Trust's contention that the annual reports' representation that Columbus Life would pay $5 million upon Kluener's death is not in the documents.[45] Instead, according to Columbus Life, the annual reports stated that "[i]f Planned Premiums are paid on

---

[40]  *Id*.

[41]  *Id*. at 16.

[42]  *Id*.

[43]  *Id*. at 17.

[44]  *Id*. at 18.

[45]  *Id*. at 19.

time" the "Insured Death Benefit" is $5 million.[46] Columbus Life argues that this is also a true statement and so none of these representations support a fraud or misrepresentation claim.[47]

Further, with regards to Wilmington Trust's allegation that Columbus Life fraudulently omitted informing Wilmington Trust of its "secretly harbored . . . plan to challenge the enforceability of the Policy and to refrain from paying any claim upon maturity," Columbus Life argues that this is not an actionable omission.[48] Columbus Life contends that Wilmington Trust has not alleged facts to trigger a duty to speak as it does not allege that a fiduciary duty existed between the parties and the law does not create such a relationship between an insurer and a policy owner.[49] Columbus Life insists that Wilmington Trust fails to allege that it or the LIP Trust ever asked it whether the Policy had an insurable interest at inception, whether it suspected or had any reason to believe that the Policy lacked an insurable interest at inception, or whether it intended to seek judicial intervention as to the validity of the Policy on this basis or any other basis.[50]

---

[46]  *Id.*

[47]  *Id.*

[48]  *Id.*

[49]  *Id.* at 19-20.

[50]  *Id.* at 23-24.

Columbus Life says too that Wilmington Trust fails to allege that it knew the alleged misrepresentations were false or that Wilmington Trust reasonably relied upon such misrepresentations.[51] Columbus Life contends also that Wilmington Trust fails to allege that it has suffered damages.[52] As Wilmington Trust owns the Policy on behalf of the LIP Trust, it would pass along the Policy's death benefit payment to the LIP Trust.[53] Thus, Columbus Life argues, Wilmington Trust would suffer no harm if the Court declares the Policy void *ab initio*.[54]

Lastly, Columbus Life contends that Wilmington Trust's alternative claim for a refund of the premium payments (Count V) fails to state a claim.[55] Columbus Life argues that the only Delaware state court decision addressing the refund of premiums paid under a life insurance policy void *ab initio* rejects a claim for an automatic refund.[56] Further, Columbus Life claims that there is a longstanding rule in Delaware that a party to an illegal contract has no remedy to any extent against the other.[57] Columbus Life ends its argument on this count by requesting that if the

---

[51]  *Id*. at 25.

[52]  *Id*.

[53]  *Id*. at 26.

[54]  *Id*.

[55]  *Id*. at 27.

[56]  *Id*. at 28.

[57]  *Id*.

Court does not dismiss this counterclaim, it should limit the counterclaim to the amount of premium payments paid by Wilmington Trust, and not the full $4.4 million paid over the Policy's life.[58]

In its motion to strike, Columbus Life seeks to excise Wilmington Trust's Second through Eighth, Eleventh, and Fourteenth Affirmative Defenses.[59] Columbus Life urges that certain Wilmington Trust affirmative defenses—waiver and estoppel (Second Affirmative Defense), misrepresentation and omissions (Third Affirmative Defense), laches (Fourth Affirmative Defense), statute of limitations (Fifth Affirmative Defense), unclean hands (Sixth Affirmative Defense), *in pari delicto* (Seventh Affirmative Defense), and contestability clause (Eleventh Affirmative Defense)—should all be stricken because such equitable defenses cannot breathe life into an agreement that is void *ab initio*.[60] With regard to Wilmington Trust's Eighth Affirmative Defense, seeking a return of all premiums paid under the policy, Columbus Life insists that it should be stricken as it is legally insufficient.[61] Similar to its dismissal argument, Columbus Life relies on the Delaware Supreme Court rule that a party to a void *ab initio* agreement generally

---

[58] *Id*. at 35.

[59] Plf.'s Mot. to Strike, at 1.

[60] *Id*. at 7-8.

[61] *Id*. at 15.

-11-

has "no remedy to any extent."[62]  Due to this rule, Columbus Life argues that this affirmative defense fails to state a claim.[63]

## III.  APPLICABLE LEGAL STANDARDS

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[64]  Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[65]

---

[62]  *Id*. at 15.

[63]  *Id*. at 18.

[64]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Superior Court Civil Rule 12(b)(6)).  This is so, and the analysis engaged is the same, whether the Court is examining aninitiating plaintiff's claim, a defendant's counterclaim, either's cross-claim, or a third-party claim. *See, e.g.*, *GWO Litig. Trust v. Sprint Solutions, Inc.*, 2018 WL 5309477, at *4 (Del. Super. Ct. Oct. 25, 2018) (applying the Rule 12(b)(6) standard to counterclaims); *Washington House Condominium Association of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *8 (Aug. 8, 2017) (applying the Rule 12(b)(6) standard to cross-claims); *Spence v. Cherian*, 135 A.3d 1282, 1286-87 (Del. Super. Ct. 2016) (applying the Rule 12(b)(6) standard to third-party claims).

[65]  *Id*. (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[66]

For Rule 12(b)(6) purposes, the Court must accept all well-pleaded allegations as true and draw every reasonable factual inference in the non-moving party's favor.[67] If the claimant may recover under that standard, then the Court must deny the motion to dismiss.[68] This is because "[d]ismissal is warranted [only] where the [claimant] has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[69]

Delaware law requires those pleading fraud and misrepresentation to do so with particularity—a heightened pleading standard.[70] To satisfy Rule 9(b), a fraud or misrepresentation claim must allege:

> (1) the time, place, and contents of the false representation;
> (2) the identity of the person making the representation; and
> (3) what the person intended to gain by making the representations. Essentially, the plaintiff is required to allege the

---

[66] *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[67] *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011); *Wilmington Sav. Fund Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super. Ct. Mar. 9, 2009) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[68] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[69] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004).

[70] Super. Ct. Civ. R. 9(b).

circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim.[71]

"When the necessary facts are . . . within the opposing party's control," however, "less particularity is required."[72] Thus, when the allegations upon which the accuser depends are obscured or possessed by the accused, the claim can survive dismissal so long as "the circumstances of the fraud" are cut "with detail sufficient to apprise the [accused] of the basis for the claim."[73]

On a motion to strike under Rule 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[74] Motions to strike an insufficient defense (or counterclaim) under Rule 12(f) focus on the form of the pleading and not its substance.[75] "When ruling on a motion to strike, 'the [c]ourt must construe all facts in favor of the

---

[71]   *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

[72]   *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *9 (Del. Super. Ct. Aug. 7, 2019) (citations omitted).

[73]   *Id.* (internal quotation marks omitted).

[74]   Super. Ct. Civ. R. 12(f).

[75]   *Nichols v. Chrysler Grp. LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010) (citing *Salem Church (Del.) Assocs. v. New Castle Cty.,* 2004 WL 1087341, at *2 (Del. Ch. May 6, 2004); *Shactman v. Carey,* 1993 WL 393337, at *1 (Del. Ch. Sept. 10, 1993) ("It must be remembered that a motion to strike is not designed to test the sufficiency of the pleadings, in the same manner that a motion for summary judgment tests the sufficiency of the pleadings."); *Vets Welding Shop, Inc. v. Nix,* 1988 WL 67703, at *1 (Del. Super. Ct. June 20, 1988) ("In essence, a motion to strike reaches formal defects only.").

nonmoving party and deny the motion if the defense is sufficient under law.'"[76]

Generally, motions to strike are not favored and are granted sparingly. [77]

## IV.  DISCUSSION

### A. COUNTERCLAIM COUNT I - DECLARATORY JUDGMENT.

Wilmington Trust's first counterclaim seeks a declaratory judgment that the Policy is enforceable through waiver and estoppel.[78] Wilmington Trust argues that by demanding and accepting premium payments with knowledge that it deems the Policy void *ab initio*, Columbus Life has waived any right to challenge, and in the alternative, is estopped from denying the Policy's validity.[79]

It is well-settled Delaware law that "[a] court may never enforce agreements void *ab initio*, no matter what the intentions of the parties."[80] Thus, it follows that

---

[76]  *Nichols,* 2010 WL 5549048, at *5 (citing  *Symbol Techs., Inc. v. Aruba Networks, Inc.,* 609 F.Supp.2d 353, 356 (D. Del.2009) ("[A] court should not grant a motion to strike a defense unless the insufficiency of the evidence is 'clearly apparent.'"); *Rhone-Poulenc Surfactants & Specialties, Inc. v. GAF Chems. Corp.,* 1993 WL 69525, at *1 (Del. Ch. Mar. 2, 1993) (noting that a motion to strike "will not be granted unless, assuming the truth of the facts alleged in the answer, it is 'clearly apparent' that the defense is legally not sufficient."); *Nix,* 1988 WL 67703, at *1 ("A motion to strike also will be denied where an answer presents a bona fide issue of fact which should be heard on the merits. . . .  If a defense is sufficient as stated, it will withstand a motion to strike because the facts alleged will be assumed to be admitted for purposes of the motion.").

[77]  *Nichols,* 2010 WL 5549048, at *5 (citing *Salem Church (Del.) Assocs.,* 2004 WL 1087341, at *2; *Stinnes Interoil, Inc. v. Petrokey Corp. & Diamond Indus., Inc.,* 1983 WL 412258, at *1 (Del. Super. Ct. May 23, 1983)).

[78]  Def.'s Countercls. ¶¶ 75-85.

[79]  Def.'s Countercls. ¶ 84.

[80]  *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.,* 28 A.3d 1059, 1067 (Del. 2011).

any policy declared as void *ab initio* may not be enforced through estoppel.[81]  This

also applies to attempts to enforce a void *ab initio* agreement through waiver.[82]

At this pleadings stage of this proceeding, it is premature for the Court to

determine the validity of the Policy.  But if the Policy is determined void *ab initio*,

it is clear that Delaware law does not allow for waiver and estoppel to revive it.  And

if it is determined that this policy is not void, then application of waiver and estoppel

are moot.  And so, Columbus Life's Motion to Dismiss is **GRANTED** as to this

counterclaim.

## B. COUNTERCLAIM COUNT II – FRAUD.

Delaware courts have observed that all fraud claims require proof of the same

or nearly the same elements.[83]  Put differently, any doctrinal variations in each breed

---

[81]  *Sun Life Assurance Co. of Canada v. Wilmington Tr., Nat'l. Ass'n.*, 2018 WL 3805740, at *2-3 (Del. Super. Ct. Aug. 9, 2018) (analyzing *Wilmington Savs. Fund Soc'y., FSB v. PHL Variable Ins. Co.* in holding that "[i]f the contract is instead void *ab initio*, *Dawe* prohibits asserting estoppel as well."); *see also Wilmington Savs. Fund Soc'y., FSB v. PHL Variable Ins. Co.*, 2014 WL 1389974, at *12 (D. Del. Apr. 9, 2014) ("'Certain agreements . . . are so egregiously flawed that they are void at the outset. These arrangements are often referred to as void *ab initio*. . . . A court may never enforce agreements void *ab initio*, no matter what the intentions of the parties.'" *Dawe,* 28 A.3d at 1067 (quotation marks omitted). Therefore, as a contract that is void *ab initio* may not be enforced equitably through estoppel.").

[82]  *Fleming v. Perdue Farms, Inc.*, 2002 WL 31667335, at *3 n. 3 (Del. Super. Ct. Oct. 30, 2002) (citing 28 Am. Jur.2d Estoppel & Waiver § 210 (2000) ("While a person may waive an advantage of law intended for his or her benefit, the doctrine of waiver does not apply to transactions that are forbidden by statute, violate the public's interests, are contrary to public policy, or that infringe upon the rights of others.").

[83]  *See, e.g.*, *Maverick Therapeutics, Inc. v. Harpoon Therapeutics, Inc.*, 2020 WL 1655948, at *26 (Del. Ch. Apr. 3, 2020) ("The elements of fraud and fraudulent inducement are the same"); *see id.* n.339 (acknowledging that it would be "tautological" to repeat an analysis of each fraud claim because the claims incorporate variations of each other's elements).

of fraud lie either with the nature of the alleged fabrication or the motivation for the alleged deception.[84] At bottom, then, a paradigmatic fraud case only requires proof of:

   a. a false representation, usually one of fact, made by the defendant;

   b. the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

   c. an intent to induce the plaintiff to act or to refrain from acting;

   d. the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

   e. damages . . . as a result of such reliance.[85]

Columbus Life miscalculates the effect of *PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust* when arguing for dismissal here.[86] Regardless of whether a contract is void *ab initio*, "the proper course of action is to evaluate each claim or counterclaim individually for sufficiency of pleading, without regard to the opponent's argument that the contract is void."[87]

---

[84] *Id.*

[85] *Id.; see E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999).

[86] *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059 (Del. 2011).

[87] *Sun Life Assurance Co. of Canada v. Wilmington Tr., Nat'l. Ass'n.*, 2018 WL 3805740, at *3 (Del. Super. Ct. Aug. 9, 2018).

A false representation may be "an overt misrepresentation (*i.e.*, a lie), a deliberate concealment of material facts, or . . . silence in the face of a duty to speak."[88]   And if Columbus Life was aware that a previous representation was misleading based on new information, then it is reasonably conceivable that Columbus Life then incurred a duty to disclose this information.[89]

Wilmington Trust alleges Columbus Life was aware of the Policy's connection with the PEM Ponzi scheme.[90]   Despite this knowledge, Wilmington Trust pleads, Columbus Life continued to collect premiums on the Policy for years.[91] Columbus Life continued to collect premiums even after the initiation of this suit.[92] Wilmington Trust bases its fraud claim on Columbus Life's maintenance of its position that the Policy was "in force," and that Wilmington Trust was the rightful owner of the Policy.[93]   Columbus Life sent annual reports which acknowledge that if Wilmington Trust continued to pay its premiums the insured death benefit would

---

[88]   *Maverick*, 2020 WL 1655948, at *26 (quoting *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (internal quotation marks omitted)).

[89]   *Id.*

[90]   Def.'s Countercls. ¶¶ 38, 67.

[91]   *Id.* ¶ 68.

[92]   *Id.* ¶ 72.

[93]   *Id.* ¶¶ 88, 89.

be $5 million.[94]  The core of Wilmington Trust's fraud claim is that Columbus Life made all of these assurances with wrongfully withheld knowledge that it would eventually seek to void the Policy.[95]

In *PHL Variable Insurance Company v. ESF QIF Trust*, the federal district court, applying Delaware law, held that the defendant's fraud counterclaim was adequately pled to survive a motion to dismiss under Rule 9(b).[96]  There, the defendant, a trust, counterclaimed against the plaintiff-insurer seeking to challenge a certain policy as void *ab initio*.[97]  When denying the insurer's attempt to dismiss the trust's counterclaim, the court noted that the defendant-trust expressly set forth in that counterclaim the types of policies subject to the alleged fraud, the names of agents who issued the policies, and details regarding the paid premiums.[98]

Similarly, Wilmington Trust has pled its fraud claim that survives the insurer's attempt at dismissal.  Wilmington Trust pleads that Columbus Life investigated policies issued by Ed Leisher, including this Policy, to determine

---

[94]  *Id.*

[95]  *Id.* ¶ 88.

[96]  *PHL Variable Ins. Co. v. ESF QIF Tr.*, 2013 WL 6869803, at *7-8 (D. Del. Dec. 30, 2013).

[97]  *Id.*, at *7.

[98]  *Id.*

whether they were stranger-oriented.[99]  Despite its investigation, Columbus Life chose not to cancel the policy.[100]  As the PEM investigation continued, Columbus Life received notice of Receivership in August 2009.[101]  Despite having this knowledge, in September 2011, Columbus Life approved Wilmington Trust as the new Owner and Beneficiary of the Policy.[102]  Similar to *ESF QIF Trust*, Wilmington Trust has provided details regarding the premiums that have been paid to date and attached portions of the annual reports that show Columbus Life's alleged misrepresentation regarding their intention to keep the policy in-force.[103]  Thereafter, Wilmington Trust relied on these misrepresentations by sending monthly premium payments to Columbus Life.[104]  Wilmington Trust has adequately pled this fraud claim under Rule 9(b), and Columbus Life's Motion to Dismiss as to this counterclaim must be **DENIED**.

---

[99]  Def.'s Countercls. ¶ 26.

[100]  *Id.*

[101]  *Id.* ¶¶ 36, 37.

[102]  *Id.* ¶ 55.

[103]  *Id.* ¶¶ 58, 59, 61, 72.

[104]  *Id.* ¶¶ 66, 72.

## C. COUNTERCLAIM COUNT III – NEGLIGENT MISREPRESENTATION.

Jurisdiction over the subject matter of a claim or counterclaim is an indispensable element in any judicial proceeding, and so, "a threshold inquiry must be made to determine whether a Court has proper jurisdiction over the claim [or counterclaim] before it."[105]  The Court may even, when necessary, raise the issue *sua sponte*.[106]  "Whenever a question of subject matter jurisdiction is brought to the attention of the trial court, the issue must be decided before any further action is taken, and the issue of jurisdiction must be disposed of regardless of the form of motion."[107]

"It is well-settled that the Court of Chancery has exclusive jurisdiction over a claim of negligent misrepresentation."[108]  Thus, outside of the narrow exception for actions brought under the Consumer Fraud Act (which is not invoked here), this Court cannot entertain a negligent misrepresentation claim or counterclaim.[109]  Nor can this Court merely dismiss such a claim or counterclaim.[110]  But the Court

---

[105] *Texcel v. Commercial Fiberglass*, 1987 WL 19717, at *2 (Del. Super. Ct.  Nov. 3, 1987).

[106] *Gea Sys. North America LLC v. Golden State Foods Corp.*, 2020 WL 3047207, at *6 (Del. Super. Ct. June 8, 2020).

[107] *Texcel*, 1987 WL 19717, at *2.

[108] *Bobcat North America, LLC v. Inland Waste Holdings,* 2020 WL 5587683, at *9 (Del. Super. Ct. Sept. 18, 2020) (citing cases).

[109] *Otto Candies, LLC v. KPMG LLP*, 2018 WL 1960344, at *4 (Del. Super. Ct. Apr. 25, 2018).

[110] *Bobcat North America, LLC,* 2020 WL 5587683, at *9.

will instead do as it has been forced to do before.  *First*, implore parties to be more conscientious when drafting their pleadings so as to avoid this jurisdictional predicament.  And, *second*, enter a most unsatisfactory order that neither brings clarity to, nor advances this litigation in any meaningful way.[111]  Columbus Life's motion is **DENIED** insofar as it seeks outright dismissal of the negligent representation counterclaim.  Wilmington Trust may seek its transfer to the Court of Chancery under 10 *Del. C.* § 1902, or elect to have this Court enter an order of its dismissal without prejudice.  Wilmington Trust's counsel are to submit, within 10 days: (1) an order on notice; and (2) if transfer is sought, a status report explaining the practical effect of the remainder of this case here.

## D. COUNTERCLAIM COUNT IV – PROMISSORY ESTOPPEL.

Columbus Life argues that the Court should dismiss Wilmington Trust's promissory estoppel counterclaim as the Policy is void *ab initio*.[112]

This Court, in *Sun Life Assurance Co. of Canada v. Wilmington Trust, National Association*, squarely addressed this issue.[113]  After thoroughly examining

---

[111] *See id.*, at \*10 ("The Court can only now lament the fact that [the negligent misrepresentation claimant] stands with the many other parties that haven't heeded the Court's admonitions to stop putting it in this jurisdictional and judicial resource-wasting pickle, figuratively shrug its shoulders, and enter an ill-fitting order on that lone count.").

[112] Plf.'s Mot. to Dismiss at 9.

[113] *Sun Life Assurance Co. of Canada*, 2018 WL 3805740.

*Price Dawe* and its subsequent cases, the Court found that the *Price Dawe* rule does not require dismissal of all counterclaims based on a void *ab initio* agreement, with the exception of estoppel claims.[114] "Logically, if the contract is found to be valid, estoppel would no longer be an available claim. If the contract is instead void *ab initio, Dawe* prohibits asserting estoppel as well."[115] This is because a void *ab initio* agreement can never be enforced.[116] Columbus Life's Motion to Dismiss is **GRANTED** as to Wilmington Trust's promissory estoppel counterclaim.

### E. COUNTERCLAIM COUNT V – RETURN OF THE PREMIUMS.

Wilmington Trust's last counterclaim seeks a declaration that, if the Court declares the Policy void *ab initio*, the premiums paid on the Policy should be returned. Columbus Life seeks to dismiss this counterclaim, arguing that no remedy is available to the parties of a void *ab initio* agreement. So, relying on the rulings in *Brighthouse Life Insurance Company v. Geronta Funding*, Columbus Life insists

---

[114] *Id.*, at \*3.

[115] *Id.*; *see SIGA Tech., Inc. v. PharAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013) ("Promissory estoppel does not apply, however, where a fully integrated, enforceable contract governs the promise at issue."); *see also Wilmington Savs. Tr. Fund v. PHL Variable Ins. Co.*, 2014 WL 1389974, at \*12 (D. Del. Apr. 9, 2014) ("A court may never enforce agreements void *ab initio,* no matter what the intentions of the parties. *Price Dawe 2006 Ins. Tr.,* 28 A.3d at 1067 (quotation marks omitted). Therefore, as a contract that is void *ab initio* may not be enforced equitably through estoppel, Defendants' Motion to Dismiss is granted as it pertains to this claim.") (internal quotation marks omitted).

[116] *Price Dawe 2006 Ins. Tr.*, 28 A.3d at 1067.

that the presumptive rule in Delaware is that parties to a policy void *ab initio* are left where they are found—the insured receives no restitution of the paid premiums.[117]

"No Delaware state court has ruled that rescission damages are available when there is a void *ab initio* insurance policy."[118]  And it is well-settled law that where there is a void *ab initio* agreement, there is no contract at all.[119]  Therefore, Columbus Life says, where there is no contract at all, it would seem there is nothing to recover thereunder.[120]

While Columbus Life's citation to the *Brighthouse Life Insurance* cases is understandable, its reliance thereon is slightly misplaced.  There, the policy in question was found to be void *ab initio*,[121] and having declared the policy void *ab initio*, the Court decided it would not grant defendant's motion seeking a full refund of the premiums previously paid.[122]  Here, the Court has yet to make a determination on the validity of the Policy itself.  Thus, it would be far too early for the Court to

---

[117] *Brighthouse Life Ins. Co. v. Geronta Funding*, 2019 WL 8198323, at *2-3 (Del. Super. Ct. Mar. 4, 2019); 2019 WL 8198324, at *2-3 (Del. Super. Ct. Mar. 14, 2019).

[118] *Brighthouse Life Ins. Co.,* 2019 WL 8198324, at *2.

[119] *Price Dawe 2006 Ins. Tr.*, 28 A.3d at 1067.

[120] *See Della Corp. v. Diamond*, 8 Storey 465, 469 (Del. May 26, 1965); *Brighthouse Life Ins. Co.*, 2019 WL 8198323, at *2; 2019 WL 8198324, at *2-3.

[121] *Brighthouse Life Ins. Co.*, 2019 WL 8198323, at *1-2; 2019 WL 8198324, at *1.

[122] *Brighthouse Life Ins. Co.*, 2019 WL 8198323, at *2; 2019 WL 8198324, at *2.

rule on Wilmington Trust's potential entitlement to restitution in lieu of the insurance proceeds it could no longer collect (even as just intermediary). Columbus Life's request for dismissal of this counterclaim is, therefore, **DENIED**.

## F. WILMINGTON TRUST'S AFFIRMATIVE DEFENSES.

Having dismissed Wilmington Trust's promissory estoppel counterclaim, the Court must strike its estoppel defense (Second Affirmative Defense) for the same underlying reason.[123]

The Third Affirmative Defense of misrepresentation is a simple reconstitution of Wilmington Trust's negligent misrepresentation counterclaim. And it must meet the same fate here. Because the Court of Chancery has exclusive jurisdiction over claims of negligent misrepresentation this "affirmative defense" is stricken.[124]

This Court does not have jurisdiction over Wilmington Trust's Fourth and Sixth Affirmative defenses. It is well-established that "[l]aches is an equitable defense that is not available in the Superior Court, which is a court of law."[125]

---

[123] *See Sun Life Assurance Co.*, 2018 WL 3805740, at *3 ("[A] contract that is void *ab initio* may not be enforced equitably through estoppel . . .") (citation omitted).

[124] *Otto Candies, LLC*, 2018 WL 1960344, at *4.

[125] *Mine Safety Appliance Co. v. AIU Ins. Co.*, 2016 WL 498848, at *12 (Del. Super. Ct. Jan. 22, 2016).

Similarly, being an equitable claim, this Court cannot consider Wilmington Trust's unclean hands defense. [126]

Wilmington Trust raises the doctrine of *in pari delicto* for its Seventh Affirmative Defense. *In pari delicto* is an equitable defense "by which a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in[,]" and therefore cannot be heard by this Court.[127]

In sum, because the equitable defenses Wilmington Trust pursues are not available in this Court, its Second, Third, Fourth, Sixth, and Seventh Affirmative Defenses are each **STRICKEN**. Defenses based on such doctrines in equity are reserved for actions in Chancery.[128] Thus, as pled here, "it is 'clearly apparent' that th[ose] defense[s are] legally not sufficient."[129]

As for Wilmington Trust's Eleventh Affirmative Defense invoking 18 *Del. C.* § 2908 and claiming incontestability, this affirmative defense too is

---

[126] *Sun Life Assurance Co.*, 2018 WL 3805740, at *3

[127] *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 301-03 (Del. Ch. 2015) (outlining the "[b]asics of the doctrine" of *in pari delicto*) (internal quotation marks and citations omitted); *Seacord v. Seacord*, 139 A. 80, 81 (Del. Super. Ct. 1927).

[128] *See Sun Life Assurance Co.*, 2018 WL 3805740, at *3; *see also Prospect Street Energy, LLC v. Bhargava*, 2016 WL 446202, at *3 (Del. Super. Ct. Jan. 27, 2016) ("Dismissal is proper where a claim amounts to a 'purely equitable cause of action' because the 'Superior Court's jurisdiction lies in matters of law, as opposed to the Court of Chancery's jurisdiction, which lies in matters of equity.'") (citation omitted); *Mine Safety Appliances Co.*, 2016 WL 498848, at *12 ("Laches is an equitable defense that is not available in the Superior Court, which is a court of law.").

[129] *RhonePoulenc Surfactants & Specialties, Inc.*, 1993 WL 69525, at *1 (citation omitted).

legally insufficient. *Price Dawe* instructs: "the incontestability provision does not bar an insurer from asserting a claim on the basis of a lack of insurable interest."[130] Our high court found that the contested contract should have never come into effect at all if it was allegedly lacking an insurable interest.[131] And a provision of a potentially voided contract cannot stand in the way of the insurer's suit.[132] Just so here. Wilmington Trust's affirmative defense of incontestability, therefore, is **STRICKEN**.

Wilmington Trust raises statute of limitations as its Fifth Affirmative Defense but then fails to specify therein what that statute of limitations is.[133] When pressed for clarification, Wilmington Trust has contended that Columbus Life's claim of an offset of damages against any premium returns must be subjected to the three-year statute of limitations found in 10 *Del. C.* § 8120.[134] Again, this issue of premium-return/retention cannot be resolved via this motion to strike. The retention or return of the premiums, and the proper measure of damages, if any, must be determined well after the pleading stage, *i.e.*, after the Policy's validity is resolved.

---

[130] *Price Dawe 2006 Ins. Tr.*, 28 A.3d at 1065.

[131] *Id.*

[132] *Id.*

[133] *See* Def.'s Countercls. at 9.

[134] Def.'s Suppl. Letter, at 1, Jan. 21, 2021 (D.I. 92); *see* Compl., at ¶ 36(f).

Accordingly, at this point, Columbus Life's attempt to strike Wilmington Trust's Fifth Affirmative Defense is **DENIED**.

Wilmington Trust's Eighth Affirmative Defense reconstitutes its proposal that if the Policy is determined void *ab initio*, then it is entitled to a refund of all premiums paid, plus interest. And here Columbus Life reconstitutes its argument on the related counterclaim. But again, Columbus Life misplaces its reliance on *Brighthouse Life Insurance*. In *Brighthouse Life Insurance*, the Court had already determined that the contested policy was indeed void *ab initio*.[135] Here, the Court has yet to make any such finding. Before the Court can decide whether any or all premiums should be returned or retained, it must first determine the legality of the Policy. Thus, as the Court has not yet done so, the Court **DENIES** Columbus Life's Motion to Strike this affirmative defense.

Wilmington Trust's Fourteenth Affirmative Defense suggests that Delaware's Uniform Commercial Code bars Columbus Life's claims. Columbus Life moves to strike this affirmative defense. "Motions to strike are 'not favored and are granted sparingly . . .'"[136] When ruling on a Rule 12(f) motion to strike a defense, the Court construes all facts in favor of the nonmoving defendant and must deny such motion

---

[135] *Brighthouse Life Ins. Co.*, 2019 WL 8198324, at *1-2.

[136] *O'Neill v. AFS Holdings, LLC*, 2014 WL 626031, at *5 (Del. Super. Ct. Jan. 15, 2014) (citation omitted).

if the defense pled is "'sufficient under law.'"[137]  Indeed, only when it is "clearly apparent" that the defense pled provides no legal remedy should the Court strike it.[138]  Columbus Life says that because Wilmington Trust does not plead its UCC defense with particularity, it should be stricken.

Columbus Life relies on one Chancery opinion which is of little aid to its effort.  There the defendant proffered a "rote and entirely uninformative assertion" in a one-line affirmative defense pled in its answer.[139]  The defendant then did almost nothing to develop its assertions ("the doctrines of estoppel, waiver, and laches") during discovery or to answer the plaintiff's discovery requests for the factual basis for that one-sentence catchall affirmative defense it pled.[140]  "[I]nstead [defendant] interject[ed] a new, intensely factual theory of defense after the close of discovery, in connection with the summary judgment proceedings, and only shortly before the scheduled trial."[141]  It was with the backdrop that the Court of Chancery granted a "motion to strike"— but really summary judgment in the form of a "decision to

---

[137] *Nichols,* 2010 WL 5549048, at *5 (citations omitted).

[138] *Rhone-Poulenc Surfactants & Specialties, Inc.*, 1993 WL 69525, at *1.

[139] *Baxter Int'l Inc. v. Rhone-Poulenc Rorer, Inc.*, 2004 WL 2158051, at *4 (Del. Ch. Sept. 17, 2004).

[140] *Id.*

[141] *Id.*, at *5.

preclude this defense"— the one-line affirmative defense under which the defendant sought to insert his newly-minted defense.[142] That's not what is happening here.

At this stage, it is premature to strike Wilmington Trust's Fourteenth Affirmative Defense as it is not yet "clearly apparent" that the defense is legally insufficient. In turn, Columbus Life's Motion to Strike Wilmington Trust's Fourteenth Affirmative Defense is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Columbus Life's Motion to Dismiss is **DENIED** as to Wilmington Trust's Counterclaim Counts II, III, and V, and **GRANTED** as to Wilmington Trust's Counterclaims Counts I and IV. Columbus Life's Motion to Strike is **DENIED** as to Wilmington Trust's Fifth, Eighth and Fourteenth Affirmative Defenses, and **GRANTED** as to its Second, Third, Fourth, Sixth, Seventh, and Eleventh Affirmative Defenses.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

Original to Prothonotary,
cc: All Counsel via File and Serve

---

[142] *Id.*, n. 24.

-30-